ALBERT T. HACKETT, plaintiff in error, *vs.* CLEMENT C. GREEN, defendant in error.

Executions having been levied by a constable on a negro, as the property of the defendant, were by him placed in the hands of the sheriff of Fulton county for sale. The levy was advertised for sale on the first Tuesday in August, 1860. The sheriff did *not* offer the property for sale on that day, and afterwards a claim was interposed for the property, which was returned by him to the November Term of Catoosa Superior Court for trial—that being the first Court in Catoosa after the executions came to his hands. At the October Term of Fulton Superior Court a rule was moved against the sheriff as for a contempt: *Held,* That the sheriff was not liable to attachment at that time, as no injury appeared to have been sustained by the plaintiff, but as injury might result, in case the negro was found to be subject, and not be forthcoming to answer the plaintiff's demand. The rule is ordered to be kept open until a disposition of said claim cease.

Rule against the sheriff, in Fulton Superior Court. Decided by Judge BULL, at the October Term, 1860.

Upon the motion of Albert T. Hackett, a rule *nisi* was served upon Clement C. Green, sheriff of Fulton county, requiring him to produce in Court seven *fi. fas.* from a Justices Court of Catoosa county, in favor of said Hackett against Justin C. Wells, amounting in the aggregate to the sum of $339 40, principal, besides interest and cost, and also to make return of his actings and doings on the *fi. fas.*, and to show cause why he should not pay the amount due on the *fi. fas.* to the plaintiff's attorney.

The rule was answered by S. B. Love, the deputy sheriff of said county, and the answer states: That the *fi. fas.* were levied by J. C. Rasberry, constable, on a negro boy by the name of Billy, as the property of the defendant in *fi. fa.*, and that said *fi. fas.*, with the levy thereon, were delivered to him by Rasberry on the 7th of June, 1860; that he advertised the negro for sale on the first Tuesday in August, 1860; that previous to the day of sale, Mr. John Caldwell, of the city of Charleston, South Carolina, told him that he claimed the negro, as trustee for his sister, the wife of the defendant in *fi. fas.*; that he was then on his way to Tennessee or Vir-

ginia; that the cars were about starting, and that he did not then have time to interpose a claim, but that he would do so at any time, and give to the deputy sheriff good security; that under these circumstances he, the deputy sheriff, did not sell the negro on the first Tuesday in August; afterwards, on the 27th of September, 1860, Caldwell did interpose his claim to the negro, and that he, the said Love, had returned the affidavit, claim bond, and forthcoming bond, to the Superior Court of Catoosa county.

Upon the showing the presiding Judge discharged the rule, and that is the decision upon which error is assigned.

HAYGOOD & JOHNSON, for plaintiff in error.

GLENN & COOPER, for defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

Was the sheriff liable to attachment for a contempt of Court upon the case as made by the rule *nisi* and the answer of his deputy, Love, at the time the rule was moved against him? We think that he was not. By section 52 of the Judiciary Act of 1779, Cobb 577, it is enacted that: "Whenever the sheriff of any county within this State shall fail to make proper return of all writs, executions, and other processes put into his hands, or shall fail or neglect to pay up all moneys received on such executions, on his being required by the Court so to do, he shall be liable to an action as for contempt, and may be fined, imprisoned, etc." The sheriff was not liable to attachment under this section, because he had not failed to make proper returns of the executions. The executions were placed in the sheriff's hands on the 7th day of June, 1860, not for levy, but for sale of the property already levied on under these executions by a constable. By law, he was required to take such action in the matter as would enable him to make a return thereof at or by the next Term of the Superior Court of Fulton county, of which he was sheriff. At that, the next Term of the Court for the county of Fulton, he did make a return that the property

had been claimed, and the executions, together with the claim papers, had been returned to the county of Catoosa, whence the executions is sued, for trial, and in time for trial of the claim at the first Term of the Superior Court in Catoosa county after the executions came to his hands. But it is objected, that if the sheriff had gone on to sell the property on the first Tuesday in August, as he had advertised, no claim would have been interposed, the property would have been sold, and the plaintiff received his money. That is a mere conjecture, that might have happened or might not. It is by no means a contempt, for had the sheriff proceeded to offer the property for sale on the first Tuesday in August, it is more than probable that some one, as agent or attorney of the claimant, would have interposed his claim and suspended the sale at that as well as at a subsequent period; but whether this was likely or not, it is clear that the sheriff having, at the time when called on, or when he was required by law so to do, made a proper return, and one which is admitted to be true, he is not liable under the 52d section.

If the sheriff be liable at all, it is under the 50th section of the Judiciary Act, Cobb, 576. By that section, it is enacted that the sheriff shall be liable either to an action on the case or an attachment for contempt of Court, at the option of the party, *whenever it shall* appear *that he hath injured such party,* either by false returns or by neglecting to arrest the defendant *or to levy on his property,* or to pay over to the plaintiff or his attorney the amount of any sales which shall be made under or by virtue of any execution, or any moneys collected by virtue thereof." There was no failure by the sheriff to levy, but a failure to sell at the time he advertised to do so is the same thing in substance, we think. To make the sheriff liable for this supposed breach of his duty under this section of the act, it is necessary that it should be made to appear to the Court that the plaintiff has been injured. Does that appear? We think not. If the property is not that of the defendant, the plaintiff has not been injured, although he might have got the money had the sheriff exposed the property for sale on the first Tuesday

in August, 1860, for in that event he would have got money which in justice he ought not to have had, and we can not say that he has been injured by a failure to get something that did not belong fairly to him.  But the plaintiff may have been injured ; the property, notwithstanding the claim may be subject to the executions, and might, from death or other cause, not be brought back to the satisfaction of the plaintiff's demand; for these chances the sheriff, by failing to sell at the time he advertised the property for sale, on the first Tuesday in August, 1860, takes the risk.  Hence we shall send the case back, and direct the Court below to keep the rule *nisi* open until the claim case is disposed of; when, if the property be not adjudged to be not subject to the executions, the sheriff shall be held liable for the payment of the plaintiff's demand by attachment as for contempt, for not exposing the negro for sale on the first Tuesday in August, 1860.

Let the judgment be reversed with directions.